UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-62268-BLOOM/Valle

JESSE IWUJI MOTORSPORTS, LLC,

    Plaintiff

vs.

EQUITY PRIME MORTGAGE LLC

    Defendant.
_____/

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AND COUNTERCLAIM**

Defendant, Equity Prime Mortgage, LLC ( "EPM"), by and through undersigned counsel, hereby submits this Answer to Plaintiff's Complaint, and Counterclaim, and states as follows:

**THE PARTIES**

1.    Admitted, upon information and belief.

2.    Admitted that EPM is an active Georgia limited liability company licensed nationwide and lawfully authorized to offer a variety of loan products to consumers. Denied as to the remaining allegations contained in Paragraph 2 of the Complaint.

**JURISDICTION AND VENUE**

3.    The allegations of this paragraph constitute legal conclusions to which no response is required and the same are therefore denied.

4.    The allegations of this paragraph constitute legal conclusions to which no response is required and the same are therefore denied.

5.    Defendant states that the "Sponsorship Agreement" speaks for itself. Defendant denies the allegations contained in Paragraph 5 to the extent that they are inconsistent with the

terms of the "Sponsorship Agreement".

6. The allegations of this paragraph constitute legal conclusions to which no response is required and the same are therefore denied.

## GENERAL ALLEGATIONS

7. Defendant states that the EPM Agreement and Statement of Work speak for themselves. Defendant denies the allegations contained in Paragraph 7 to the extent that they are inconsistent with the terms of the EPM Agreement and Statement of Work.

8. Defendant states that the EPM Agreement and Statement of Work speak for themselves. Defendant deny the allegations contained in Paragraph 8 to the extent that they are inconsistent with the terms of the EPM Agreement and Statement of Work.

9. Defendant states that the EPM Agreement and Statement of Work speak for themselves. Defendant denies the allegations contained in Paragraph 9 to the extent that they are inconsistent with the terms of the EPM Agreement and Statement of Work.

10. Admitted.

11. Defendant denies for want of knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations of each and every allegation set forth in paragraph 11 of the Complaint and strict proof is demanded thereof.

12. Defendant denies for want of knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations of each and every allegation set forth in paragraph 12 of the Complaint and strict proof is demanded thereof.

13. Defendant admits there is a document attached as Exhibit B. Defendant denies the allegations set forth in paragraph 13 of the Complaint and state that it was Plaintiff that breached the terms of the Sponsorship Agreement.

14. Defendant denies the allegations contained in Paragraph 14 of the Complaint and

demands strict proof thereof.   The document therein referenced speaks for itself.

15.   Defendant denies the allegations contained in Paragraph 15 of the Complaint and demands strict proof thereof.   The document therein referenced speaks for itself.

16.   Defendant denies the allegations as stated in Paragraph 16 of the Complaint and demands strict proof thereof.

17.   The allegations in Paragraph 17 of the Complaint constitute legal conclusions to which no response is required and the same are therefore denied.

18.   The allegations in Paragraph 18 of the Complaint constitute legal conclusions to which no response is required and the same are therefore denied.

19.   The allegations in Paragraph 19 of the Complaint constitute legal conclusions to which no response is required and the same are therefore denied.  The document referenced therein speaks for itself.

20.   Defendant denies the allegations contained in Paragraph 20 of the Complaint and demand strict proof thereof.

## COUNT I – BREACH OF CONTRACT (EPM AGREEMENT)

21.   In response to Paragraph 21, Defendant re-alleges its responses to Paragraphs 1-20 as if fully set forth herein.

22.   Defendant states that the EPM Agreement and Statement of Work speak for themselves, but denies each and every other allegation set forth in Paragraph 22 of the Complaint.

23.   Defendant denies the allegations contained in Paragraph 23 of the Complaint and demands strict proof thereof.

24.   Defendant denies the allegations contained in Paragraph 24 of the Complaint and demands strict proof thereof.

25.   Defendant denies the allegations contained in Paragraph 25 of the Complaint and

demand strict proof thereof.

26. Denies each and every allegation in the Complaint not admitted, denied, or otherwise fully addressed above.

### AFFIRMATIVE DEFENSES

Affirmative Defense No. 1:

The Complaint fails to state a claim upon which relief may be granted because there is a complete failure to allege sufficient facts to support a legally cognizable claim that is plausible on its face. Instead, the Complaint merely offers labels and conclusions with a formal recitation of the elements of a cause of action, but fails to show that Plaintiff is entitled to any relief.

Affirmative Defense No. 2:

Plaintiff's claims are barred, in whole or in part, by reason of Plaintiff's unclean hands. Plaintiff engaged in a scheme to deceive Defendant by, inter alia, knowingly concealing violations of the Sponsorship Agreement.

Affirmative Defense No. 3:

Plaintiff's claims are barred by their antecedent breach. Specifically, Plaintiff's claim that Defendant breached the Sponsorship Agreement came after Plaintiff had acknowledged same in a meeting with Defendant on or about May 11, 2022.

Affirmative Defense No. 4:

Plaintiff's claims are barred by the doctrine of modification.

Affirmative Defense No. 5:

Plaintiff's claims are barred, in whole or in part, by reason of there not having been a meeting of the minds as to certain material terms of the Sponsorship Agreement.

Affirmative Defense No. 6:

Plaintiff has breached the implied duty of good faith and fair dealing inherent in every

agreement. The Plaintiff not only breached the Sponsorship Agreement thereto in failing to provide Deliverables, but Plaintiff also intentionally remained silent as to violating the Sponsorship Agreement by withholding key information that went to the heart of the relationship between Defendant and Plaintiff.

### Affirmative Defense No. 7:

The claims are barred by the doctrines of waiver, equitable estoppel, and release.

### Affirmative Defense No. 8:

To the extent that Plaintiff failed to set forth its claim with sufficient particularity to permit Defendant to determine all applicable and available defenses, Defendant reserves the right to amend and/or supplement this Answer with additional defenses when and if such information is ascertained.

### Affirmative Defense No. 9:

Plaintiff engaged in conduct that constitutes a waiver of its rights under any agreements with the Defendant. By reason of said waiver, the Defendant is excused from further performance of the obligations under any alleged agreement.

### Affirmative Defense No. 10:

Plaintiff's actions and/or any agreements by and between the parties constituted a full release and waiver by Plaintiff of any and all claims which Plaintiff may have against Defendant.

### Affirmative Defense No. 11:

The Complaint is barred because Plaintiff engaged in acts and courses of conduct which rendered it in pari delicto.

### Affirmative Defense No. 12:

Plaintiff may take no recovery because of the failure to mitigate damages.

## DEFENDANT PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any relief on the Complaint. Defendant demands judgment dismissing Plaintiff's Complaint with prejudice, costs of suit, including reasonable attorneys' fees, and all other relief this Court deems just and proper.

## COUNTERCLAIM

### Jurisdiction And Venue

1. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28.U.S.C. §1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and cost, and pursuant to 28 U.S.C. §1367 as the claims in the Counterclaim are so related to the claims in Plaintiff's Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper under 28 U.S.C. §1391(a)(1) in (3) in the United States District Court for the Southern District of Florida.

### The Parties

3. Equity Prime Mortgage, LLC ("EPM") is a Georgia-based nationwide limited liability mortgage company duly licensed and lawfully authorized to offer a variety of loan products to consumers nationwide, including the State of Florida.

4. Jesse Iwuji Motorsports, LLC ("JIM") is upon information and belief a Florida limited liability company comprised of several members including, but not limited to both Emmitt Smith and Jesse Iwuji for whom JIM is named as he is the sole driver for the American stock car racing team.

### Factual allegations

5. EPM was founded as a minority owned mortgage company and since its founding

in 2008 has become a nationwide lender and leader in the mortgage industry.

6. EPM's mission is to "Empower People More". To effectuate EPM's mission, the majority owner, Eduardo G. Perez, Jr., ("Perez") is committed to his "vision where everyone of all walks of life is given the opportunity for homeownership."

7. Perez, in his continuing pursuit of the American Dream felt a kinship to both Emmitt Smith and Jesse Iwuji's personal journeys to success, which in no small manner mirrored aspects of his own personal journey to success and fulfillment of his American Dream.

8. Perez admired Jesse Iwuji's personal story from playing college football to his service as an officer in the Navy to finally fulfilling his dream of becoming a racecar driver.

9. As a result, when the opportunity presented itself to Perez to participate in the sponsorship and the continuing journey of supporting a minority owned and operated race car team such opportunity was not something that Perez felt that he could ignore.

10. Perez believed that EPM's vision and his idea for Empowering People More was in line with the values of sponsoring Jesse Iwuji's continuing dream of racing in NASCAR.

11. Therefore, EPM agreed to enter into a "Sponsorship Agreement" in or around November 30, 2021 (See "Exhibit A" to Plaintiff's Complaint) for the specific purpose of sponsoring Jesse Iwuji driving in NASCAR and to support a minority owned business.

12. The implicit intent of the Sponsorship Agreement was to support both Emmitt Smith and Jesse Iwuji and all aspects relating to the Statement of Work as to the services that would be provided in exchange for the costs associated with sponsoring a racecar team were geared for only Jesse Iwuji and Emmitt Smith.

13. The appearances and use of images and likeness as to the sponsorship for EPM were exclusively for Jesse Iwuji and Emmitt Smith. Implicit in the Sponsorship Agreement with JIM, named for Jesse Iwuji, was that Jesse Iwuji was always the only racecar driver for JIM. At

no time were there discussions of EPM agreeing to enter into a sponsorship agreement that provided for someone other than Jesse Iwuji driving the EPM sponsored racecar.

14. Yet, much to Perez's surprise, he came to learn in around the beginning of May 2022 that Jesse Iwuji was no longer the sole and agreed upon driver of the EPM sponsored racecar. In fact, JIM knowingly concealed that another racecar driver was now driving the EPM sponsored racecar. Thereafter, when JIM was confronted with knowingly concealing that it was not honoring the terms of the Sponsorship Agreement; a member of JIM, Matthew Casto ("Casto"), requested that he fly to Atlanta to meet with Perez.

15. Casto flew to Atlanta and met with Perez and an employee of EPM on May 11, 2022. During that meeting Casto acknowledged that JIM had breached the terms of the Sponsorship Agreement, and apparently the breach began several months earlier, and that JIM concealed that Jesse Iwuji was no longer driving the EPM sponsored racecar. Casto stated that his reason for coming to Atlanta was that "I wanted to make it right by coming face to face so you heard everything from the horse's mouth".

16. During the May 11, 2022 meeting, Casto claimed that Jesse Iwuji was being "sabotaged" by JIM's own racing team and being subjected to racism. Casto acknowledged that what was transpiring within the race team and to Jesse Iwuji was concealed from EPM. Casto stated that NASCAR is based on a point system and he claimed that since Jesse Iwuji was not good enough as a driver, as well as having been sabotaged by his own team, that they were therefore forced to bring in another driver with more experience to get points.

17. Casto went further to explain how much they valued EPM's sponsorship, and that although JIM breached the agreement and knowingly concealed such information that Casto assured Perez that JIM would do whatever it could "to make it right" with EPM. In fact, JIM was fully cognizant that it received the agreed upon monthly payments of $187,500.00 per month

from EPM while simultaneously having already breached the Sponsorship Agreement.

18.     In the ensuing months after the May 11, 2022 meeting, EPM in good faith attempted to work with JIM so that JIM would honor Casto's representations to "make it right". Yet, despite EPM's continuing efforts; the value in the sponsorship agreement and the continuing mission of EMP were not being achieved.

19.     JIM had not cured the breach to the acceptance of EPM. Finally, in October 2022, as EPM, and the entire mortgage industry continued to suffer due to continued inflation and unprecedented interests rate hikes; Perez, after having fully paid and provided JIM multiple months to reach a solution to "make it right" advised JIM that EPM could no longer support the sponsorship to the same extent.

20.     In response to Perez, JIM on or around November 3, 2022, sent EPM a notice (See Exhibit "B" to Plaintiff's Complaint) attempting to terminate the Sponsorship Agreement, which JIM had already breached. EPM upon receipt of JIM's "Notice" responded the next day providing its own Notice not only rejecting JIM's contentions as to EPM being the party in breach, but importantly reminding JIM that it was the party that had always been in breach of the Sponsorship Agreement, and that JIM could not cure its breach of the agreement.

## BREACH OF CONTRACT

21.     EPM re-states and re-alleges the allegations set forth in Paragraphs 1 through 20, inclusive, as if fully set forth herein.

22.     EPM entering into a contract (the "Sponsorship Agreement") that required that JIM provide certain services and deliverables that were material elements to the formation of the contract and the agreement as reached by and between the parties herein.

23.     JIM failed to participate in certain events in accordance with the Scope of Work as incorporated into the Sponsorship Agreement. JIM further knowingly concealed that Jesse Iwuji

9

was no longer the sole driver of the EPM sponsored racecar. Such actions by JIM constituted material breaches to the Sponsorship Agreement.

24. EPM performed all of its contractual obligations to JIM under the Sponsorship Agreement, and continued to remit $187,500.00 despite learning that JIM had materially breached the Sponsorship Agreement for several months before meeting with EPM on or about May 11. 2022 in Atlanta.

25. EPM accepted JIM's offer to "make it right" to cure its material breach of the Sponsorship Agreement. JIM failed to cure or remedy the material breaches, which continues through the date of the filing of this Answer and Counterclaim.

26. EPM has suffered both economic and non-economic damages and continues to suffer damages as a result of JIM's material breaches.

## REQUEST FOR JURY TRIAL/RELIEF

Plaintiff requests a jury trial on all issues so triable.

WHEREFORE, EPM demands judgment against JIM for Compensatory Damages, Punitive Damages, together with attorney's fees, costs of suit, interest and any further damages or relief this court may deem just and appropriate.

Dated February 9, 2023                     Respectfully Submitted,

**KREINER BURNS**
**Attorneys for Defendant Equity Prime Mortgage, LLC**
950 Peninsula Corporate Circle/Suite 3001
Boca Raton / Florida / 33487
(p)(561)901-8400 (f)(561)666-9700

BY:   */S/ Seth A. Kreiner*
              Seth A. Kreiner, Esq.,
              Florida Bar No.: 432040
              seth@kreinerlawfirm.com