UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO.: 0:22-cv-62268-BB

JESSE IWUJI MOTORSPORTS, LLC,

    Plaintiff/Counter-defendant,

v.

EQUITY PRIME MORTGAGE, LLC,

    Defendant/Counterclaimant.

_____/

**Plaintiff/Counter-Defendant's Response In Opposition to Motion for Summary Judgment**

Plaintiff/Counter-Defendant, Jesse Iwuji Motorsports, LLC ("JIM"), by and through undersigned counsel, hereby responds in opposition to Defendant/Counterclaimant's, Equity Prime Mortgage, LLC ("EPM"), Motion for Summary Judgment [D.E. 35], and, in support thereof, states as follows:

**I.     Introduction**

EPM's Motion for Summary Judgment contains nothing more than a bunch of irrelevant tidbits and citations to personal anecdotes that have no bearing or relation to the facts and legal issues relating to this action, and are provided solely to misguide the Court into believing the Sponsorship Agreement executed between the parties contains certain terms and conditions that are completely non-existent and non-essential to the parties' performance as required therein. EPM's Motion for Summary Judgment is a painful attempt at grasping for straws that do not exist, as the entirety of EPM's Motion for Summary Judgment relies on unfounded assertions and/or statements. However, EPM's Motion for Summary Judgment does get one thing right, which is

the fact that the terms of the Sponsorship Agreement are **clear and unambiguous.** As such, the Court is tasked with reviewing and interpreting the plain meaning of the Sponsorship Agreement – as drafted and executed between the parties – in order to determine the intent of the parties.

In reviewing the clear and unambiguous terms of the Sponsorship Agreement, the following is abundantly clear: (i) the Sponsorship Agreement was jointly drafted and executed solely between JIM and EPM, and not with any specific individual (*see* **D.E. 34, Exhibit A, ¶ 12(h)**) ("*Each Party acknowledges that they have participated in the drafting and negotiation of this Agreement and have been afforded the opportunity to have legal counsel review this Agreement. As a result, there shall be no presumption against either Party on the ground that such Party was solely responsible for preparing this Agreement.*") (emphasis added); (ii) the Sponsorship Agreement includes a SOW that sets forth the specific deliverables to be provided by JIM in exchange for EPM's payment of the sponsorship fee (*see* **D.E. 34, Exhibit A**) ("*This SOW sets forth the specific services to be provided…and work product to be delivered by JIM…with regard to the project described herein…as well as the deliverables and deadlines for both JIM and [EPM], and any additional terms governing the relationship*.") (emphasis added); (iii) none of the specific deliverables set forth in the SOW require that Jesse Iwuji be the sole and exclusive driver for JIM during the term of the Sponsorship Agreement; (*Id.*) and (iv) in the event the Sponsorship Agreement is terminated as a result of EPM's breach (including, without limitation, failure to make payment of the sponsorship fee), JIM remains entitled to full receipt of the sponsorship fee (*see* **D.E. 34, Exhibit A, ¶ 7(c)**) ("*Upon expiration or termination of the Agreement, all rights, duties, and obligations of the Parties shall automatically cease as of the date of expiration or termination; provided, in the event of termination pursuant to [EPM's]*

***material breach of this Agreement, [EPM] acknowledges that it shall remain responsible for paying JIM the entirety of the compensation set forth in the SOW***.") (emphasis added).

Based on the foregoing and as further elaborated below, there should be no debate as to the intent of the parties in executing the Sponsorship Agreement, and the intended consequences in the event of party's failure to adhere to its terms. For such reason, not only should EPM's Motion for Summary Judgment be categorically denied, but the Court should also concurrently grant JIM's Motion for Summary Judgment [D.E. 33].

## II. Memorandum of Law[1]

### A. Legal Standard

Summary Judgment is appropriate if the moving party demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "a reasonable trier of fact could return judgment for the nonmoving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is considered material if "it would affect the outcome of the suit under governing law." *Id*.

In deciding a summary judgment motion, the Court must view the facts in the light most favorable to the nonmoving party, and draws all reasonable inferences in the nonmoving party's favor. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d

---

[1] For the purpose of brevity, and to the extent not expressly set forth herein, JIM incorporates each of its arguments, facts, and citations set forth in JIM's Motion for Summary Judgment. *See* [D.E. 33].

1092, 1120 (11th Cir.2005) ("A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law.").

B. **EPM has Failed to Meet its Burden to show no Genuine Issue of Material Fact Exists, and Therefore is not Entitled to Summary Judgment as it relates to EPM's Counterclaim.**

It is well settled that contract interpretation is a question of law appropriately decided on summary judgment. *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). Notwithstanding, EPM has failed to meet its burden to show that no genuine issue of material fact exists as to its allegations raised in its Counterclaim [D.E. 10]. The crux of EPM's Motion for Summary Judgment is premised upon the following belief – JIM materially breached the Sponsorship Agreement by failing to have Jesse Iwuji be the sole and exclusive driver for JIM's NASCAR stockcar racing team during the term of the agreement. *See* EPM Counterclaim, [D.E. 10], pg. 8 ("Here, JIM materially breached the Agreement when it failed to have Jesse Iwuji drive for JIM in the eight EPM sponsored races."); *see also Id*., at pg. 9 ("Jesse Iwuji's failure to drive in the eight primary races was a material breach of the Agreement"); *see also Id.*, at pg. 10 ("The terms of the Agreement are clear that Jesse Iwuji was to be the sole driver – and his driving was a material term that was breached when Jesse Iwuji failed to drive in one-half of the contracted races.").

The issue with EPM's assertion is that the more often a statement is repeated does not make it fact. JIM does not dispute EPM's assertion that the terms of the Sponsorship Agreement are clear and unambiguous. "If the language appearing in the written agreement is clear and unambiguous, the parties' intent is to be discerned **solely** from the plain meaning of the words used." *Alliance Metals, Inc., of Atlana v. Hinely Industries, Inc.*, 222 F.3d 895, 901 (11th Cir. 2000) (emphasis added). Furthermore, when a contract is unambiguous, the parol evidence bars the

Court's consideration of extrinsic evidence. *See Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1360 (11th Cir.1988).

As such, the specific terms of the Sponsorship Agreement – *see* **Exhibit A to Second Amended Complaint, D.E. 7-1** – control and the Court is tasked with interpreting the plain meaning of the words as stated therein for the purpose of discerning the intent of the parties in executing the agreement. Despite EPM's assertions, nowhere in the Sponsorship Agreement does it state that Jesse Iwuji was to be the sole and exclusive driver for JIM. The Services and Deliverables (as defined in the Sponsorship Agreement) to be provided by JIM in exchange for EPM's payment of the sponsorship fee are set forth in the SOW attached thereto. Looking at the terms of the SOW:

- The SOW includes a section titled "Race Sponsorship Deliverables." This section states, "During the Term, JIM shall ensure the performance of the following Services and/or Deliverables." The Services and/or Deliverables are broken up into two categories: (1) **On-Track *Team* Commitments**, and (2) **Off-Track *Team* Commitments**.

- To the extent any of the Race Sponsorship Deliverables required the performance thereof by any specific individual, such individual's performance is specifically delineated in the SOW. The SOW clearly and unambiguously lists the following Services and/or Deliverables as those to be performed by a specific individual:

    o JIM shall provide Emmitt Smith 1x per year minimum for Equity Prime Mortgage suite appearance/photos/interaction on race day for a day of celebration with Equity Prime Mortgage's most important guests followed by joining Equity Prime Mortgage's team for dinner. The date, time, and location of the foregoing appearance shall be mutually determined by the Parties.

    o One (1) day of production each quarter with Jesse Iwuji (maximum six (6) hours) on a mutually agreeable day. The date, time, and location of the production day shall be mutually determined by the Parties.

    o JIM will provide Emmitt Smith for 6hrs of production per year (2 hours off-track. 4 hours at track or at current location). The date,

- time, and location of the production day shall be mutually determined by the Parties.

- Film content with Jesse Iwuji and Emmitt Smith in EPM logo polo for reveal Equity Prime Mortgage sponsored race car on November 18, 2021.

- Social media posts from Jesse Iwuji and Emmitt Smith.

- EPM logo placement on Jesse Iwuji's personal website.

- Jesse Iwuji to be available for Equity Prime Mortgage podcast once a quarter. The date, time, and location of the podcast taping shall be mutually determined by the Parties. Emmitt Smith available to join with Jesse for 2x podcast each year of agreement. Dates must be mutually agreed upon.

- Jesse Iwuji to be available for a sixty (60) min virtual team talk addressing the Equity Prime Mortgage team once per quarter. Dates must be mutually agreed upon.

- Emmitt Smith & Jesse Iwuji to appear live at EPMX Jan 28th 2022 @ 4pm Est in Atlanta for 45-60 min session. Jesse and Emmitt to interact and engage with those attendees. Photos may be requested with certain guests.

**Nowhere in the aforementioned listing of Services and/or Deliverables does it clearly and unambiguously state that Jesse Iwuji was to serve as the sole and exclusive driver of JIM during the term of the Sponsorship Agreement**. The omission of such plain language requiring that Jesse Iwuji serve as the sole and exclusive driver of JIM's NASCAR stockcar racing team presents an issue of genuine material fact as it relates to EPM's attempt to obtain summary judgment with regard to its Counterclaim.

EPM attempts to rely on various other terms included in the SOW as its basis for arguing the Sponsorship Agreement clearly and unambiguously states that Jesse Iwuji would be sole and exclusive driver for JIM – namely, EPM states [*see* D.E. 35, pg. 4]:

- The Sponsorship Agreement only provided the name, image and likeness rights for Jesse Iwuji and Emmitt Smith – **This argument fails because it**

**lacks reference to any requirement that Jesse Iwuji is to be sole and exclusive driver for JIM.** Specifically, as part of JIM's Off-Track Commitments, EPM is granted the right to "Use of JIM Trademarks and Talent Likeness for Equity Prime Mortgage campaigns using Approved Images provided by JIM. All use of JIM Trademarks and/or Talent Likeness shall be subject to JIM's prior written approval." *See* **Exhibit A to Second Amended Complaint, D.E. 7-1**. "Talent Likeness" is defined as "the name, image, likeness and/or other publicity rights of: (1) Jesse Iwuji, and (2) Emmitt Smith." Per the plain meaning of the words used in relation to this Race Sponsorship Deliverable, the intent of the parties in including this language was to allow EPM the right to use the name, image, and likeness of Jesse Iwuji and/or Emmitt Smith in promotional efforts regarding EPM's marketing of its services. **The plain meaning of this language does not support the arguments raised in EPM's Motion for Summary Judgment**.

- The Sponsorship Agreement provided that it would be Jesse Iwuji who would provide two social media posts in advance of each race – **This argument fails because it lacks reference to any requirement that Jesse Iwuji is to be the sole and exclusive driver for JIM**. Specifically, as part of JIM's Off-Track Commitments, JIM was to ensure, *inter alia*, "Two (2) Social media posts the week leading up to the race from JIM's and Jesse Iwuji's personal pages." *See* **Exhibit A to Second Amended Complaint, D.E. 7-1**. Per the plain meaning of the words used in relation to this Race Sponsorship Deliverable, the intent of the parties in including this language was for JIM to provide promotional efforts via Jesse Iwuji to promote EPM's sponsorship of JIM's participation in races. This provision of promotion efforts by JIM is further supported by the fact that JIM and Emmitt Smith were also tasked with providing social media posts in advance and/or otherwise pertaining to races. *See Id.* **The plain meaning of this language does not support the arguments raised in EPM's Motion for Summary Judgment.**

- The Sponsorship Agreement provided that Jesse Iwuji would appear quarterly at EPM for: (1) live events; (2) podcasts; and (3) to create content – **This argument fails because it lacks reference to any requirement that Jesse Iwuji is to be the sole and exclusive driver for JIM**. Specifically, as part of JIM's Off-Track Commitments, JIM was to ensure, *inter alia*, each of the following – "[1] Jesse Iwuji to be available for Equity Prime Mortgage podcast once a quarter. The date, time, and location of the podcast taping shall be mutually determined by the Parties. Emmitt Smith available to join with Jesse for 2x podcast each year of agreement. Dates must be mutually agreed upon[; 2] Jesse Iwuji to be available for a sixty (60) min virtual team talk addressing the Equity Prime Mortgage team once per quarter. Dates must be mutually agreed upon[; and 3] One (1) day of production each quarter with Jesse Iwuji (maximum six (6) hours) on a

>mutually agreeable day." *See* **Exhibit A to Second Amended Complaint, D.E. 7-1**. Per the plain meaning of the words used in relation to these Race Sponsorship Deliverables, the intent of the parties in including this language was for JIM to create audio/visual content for EPM's benefit via JIM's owners, including Jesse Iwuji. This provision of content creation services by JIM is further supported by the fact JIM's other owner, Emmitt Smith, was also tasked with content creation services, including, but not limited to, appearing on podcasts and participating in production days. *See Id.* **The plain meaning of this language does not support the argument raised in EPM's Motion for Summary Judgment.**

Not only does EPM's Motion for Summary Judgment fail to show there exists no issue of genuine material fact regarding the allegations raised in its Counterclaim, but the facts on which EPM's Motion for Summary Judgment relies are not supported by the plain meaning of the clear and unambiguous language set forth in the fully-integrated Sponsorship Agreement executed between the parties (including, without limitation, the fact the same rights and/or services secured regarding Jesse Iwuji were also secured from Emmitt Smith – yet, EPM makes no argument that Emmitt Smith was also to be the sole and exclusive driver for JIM's NASCAR stockcar racing team). Understanding the predicament EPM's faulty arguments place itself, EPM also attempts to rely on "negotiations incorporated into the Agreement" to purport that Jesse Iwuji being the sole and exclusive driver was a material condition of EPM's execution of the Agreement. *See*, [D.E. 35, pg. 10].

Firstly, as the Sponsorship Agreement is clear and unambiguous, "the parol evidence rule bars the admission of extrinsic evidence of antecedent understandings and negotiations" to vary or contradict the terms of the Sponsorship Agreement. *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1363-4 (S.D. Fla. 2007); *see also Certain British Underwriters at Lloyds of London, England v. Jet Charter Service, Inc.*, 789 F. 2d 1534, 1535 (11th Cir. 1986) ("It is a well settled rule of Florida law that parol or extrinsic evidence may not be introduced for the purpose

of construing written contract terms which are plain and unambiguous."). As such, EPM's reliance on "negotiations" is misplaced and may not be considered by the Court.

Secondly, JIM disputes that any such "negotiations" took place. *See* Declaration of Matt Casto, ¶ 10 ("At no point in time during the course of negotiations did I represent to EPM that Jesse Iwuji would be the sole driver of JIM's NASCAR stock racing team."); *see also Id.*, at ¶ 11 ("At no point in time during the course of negotiations did EPM tell or represent to me that Jesse Iwuji being the sole driver of JIM's NASCAR stock racing team was a condition of EPM's sponsorship."). Thus, again, EPM has failed to meet its burden to obtain summary judgment regarding its Counterclaim.

### C. EPM has Failed to Meet its Burden to show no Genuine Issue of Material Fact Exists, and Therefore is not Entitled to Summary Judgment as it relates to JIM's Second Amended Complaint.[2]

As it relates to JIM's Second Amended Complaint, EPM asserts that JIM's claims "must be dismissed because JIM failed to perform its obligations under the Agreement." *See*, [D.E. 35, pg. 11]. However, EPM has failed to show no genuine issue of material facts exist in support of such claim. Particularly, as shown above, EPM has failed to show that the clear and unambiguous language set forth in the Sponsorship Agreement establishes Jesse Iwuji being the sole and exclusive driver for JIM's NASCAR racing team as a condition of the agreement. Specifically, there is nothing in the Agreement requiring that Jesse Iwuji be the only driver for JIM, or that JIM was precluded from retaining other drivers to race on the team's behalf.

Furthermore, JIM disputes the other breaches cited by EPM – *see*, [D.E. 35, pg. 11] – as follows:

---

[2] The record clearly shows that EPM's failure to make payment was not the result of EPM claiming that JIM was in breach of the Sponsorship Agreement, but rather EPM's inability to handle to headwinds stemming from rising mortgage interest rates. *See* [D.E. 35, pg. 10-11].

- JIM disputes that Jesse Iwuji failed to post his two contracted for social media posts in the weeks preceding the March 5, 2022, May 28, 2022, or October 1, 2022 races, as Jesse Iwuji made such posts in accordance with the terms set forth in the Sponsorship Agreement. *See* Declaration of Jesse Iwuji, ¶¶ 14 – 15, 17 – 18.

- JIM disputes that JIM failed to meet its obligation to ensure that Jesse Iwuji appear in quarterly podcasts, due to the fact the Sponsorship Agreement states that the "date, time, and location of the podcast taping shall be mutually determined by the Parties," (*see* **Exhibit A to Second Amended Complaint, D.E. 7-1**), and, other than the one podcast appearance made by Jesse Iwuji, EPM failed to propose dates for Jesse Iwuji's appearance on EPM's podcast. *See* Declaration of Matt Casto, ¶¶ 24 – 25; Declaration of Jesse Iwuji, ¶¶ 20 – 21. As a result, any failure of performance pertaining thereto is the result of EPM's failure to perform necessary obligations as required under the Sponsorship Agreement.

- JIM disputes that JIM failed to meet its obligation to ensure that Jesse Iwuji participate in a live event for EPM in Quarter 2 of 2022, due to the fact that the Sponsorship Agreement states: (i) JIM was to ensure Jesse Iwuji's availability for **virtual** team talks addressing the EPM team once per quarter (making no mention of any requirement to participate in quarterly live events), and (ii) that the date of any such performance must be mutually agreed upon (*see* **Exhibit A to Second Amended Complaint, D.E. 7-1**), and – despite the fact EPM's Motion for Summary Judgment is completely devoid of detail regarding what event in quarter 2 of 2022 Jesse Iwuji failed to participate in, or whether any such event actually took place – EPM failed to request any such dates for performance. *See* Declaration of Matt Casto, ¶¶ 24 – 25; Declaration of Jesse Iwuji, ¶¶ 20 – 21. As a result, any failure of performance pertaining thereto is the result of EPM's failure to perform necessary obligations as required under the Sponsorship Agreement. Notwithstanding, JIM did ensure that Jesse Iwuji film EPM content in quarter 2 of 2022. *See* Declaration of Matt Casto, ¶ 25; Declaration of Jesse Iwuji, ¶ 22.

Additionally, Section 7(b) of the Sponsorship Agreement states that "Either Party may terminate the Agreement upon written notice to the other Party if such Party is in breach of any material provision of the Agreement and such breach is not cured within thirty (30) days after written notice thereof is received by the Party." *See* **Exhibit A to Second Amended Complaint, D.E. 7-1** At no point in time during the course of the parties relationship – particularly, prior to JIM's delivery of its Notice of Intent to Terminate – did EPM ever provide JIM with written notice

describing any breach by JIM of the terms of the Sponsorship Agreement. *See* Declaration of Matt Casto, ¶ 27. Any alleged breaches are defeated by: (i) EPM's failure to perform its obligations as required under the Sponsorship Agreement (i.e. failure to propose dates to be mutually agreed upon for the performance of certain Services and/or Deliverables); (ii) lack of express language in the Sponsorship Agreement supporting any alleged breach (as discussed, *supra*); and/or (iii) EPM's own actions acknowledging performance of Services and/or Deliverables (including, but not limited to, promoting other drivers racing on behalf of JIM's NASCAR racing team, *see* Declaration of Matt Casto, ¶ 22). For such reasons, EPM has not established that no issue of genuine material exists regarding its attempt to seek summary judgment in relation to JIM's Second Amended Counterclaim.

**D. EPM's Alternative Claim Does Not Warrant Summary Judgment.**

Finally, EPM claims that the Sponsorship Agreement is unenforceable. *See* [D.E. 35, pg. 11-12]. This last-ditch attempt to avoid liability is not supported by any facts or evidence presented by EPM, nor is it supported by law. To start, EPM is judicially estopped from questioning the validity of the Sponsorship Agreement due to the fact that EPM is concurrently relying on such validity to claim breach thereof pursuant to its Counterclaim and Motion for Summary Judgment. *See* [D.E. 35, pg. 7 – 11] (EPM listing the elements for a breach of contract claim as (1) existence of contract, (2) material breach of that contract, and (3) damages, and arguing that EPM suffered damages as a result of JIM's material breach of an existing contract, i.e., the Sponsorship Agreement). In *Slater v. United States Steel Corporation*, 871 F.3d 1174, 1180-1 (11th Cir. 2017), the 11th Circuit stated:

> The equitable doctrine of judicial estoppel is intended to 'prevent the perversion of the judicial process' and 'protect its integrity…by prohibiting parties from deliberately changing positions according to the exigencies of the moment'… When a party does so, the doctrine of judicial estoppel allows a court to exercise its

discretion to dismiss the party's claims. [citation omitted]. Stated simply, the doctrine of judicial estoppel rests on the principle that 'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.

Not only is EPM's alternative claim inapposite to the position taking by EPM in filing its one-count Counterclaim for breach of contract, but it also unsupported by law. Under Florida law, a contract is formed when there is an offer and acceptance, which constitutes a meeting of the minds between the parties on the contract's essential terms. *Perkins v. Simmons*, 15 So.2d 289, 290, 153 Fla. 595, 599 (1943). Here, the essential terms of the Sponsorship Agreement were offered and accepted between the parties, evidenced by the parties execution and subsequent performance in accordance with its terms.

Moreover, the requisite meeting of the minds between JIM and EPM was met. The test for determining meeting of the minds is objective – "what is required is an agreement on a set of external signals, not the same subjective understanding of those signals." *See Martin Energy Services, LLC v. M/V Bravante IX*, 233 F. Supp. 3d 1269 (N.D. Fla 2017). Here, again, the external signals were set out in the actions taken by JIM in furtherance of the sponsorship (including, without limitation, performing the Race Sponsorship Deliverables), and EPM's monthly payment of the sponsorship fee in exchange for such performance (including, without limitation, during months in which Jesse Iwuji was not the sole and exclusive driver for JIM's NASCAR team).

In conclusion, at no point in time did EPM represent that Jesse Iwuji serving as the sole and exclusive driver of JIM was an essential element and/or the sole reason for its execution of the Sponsorship Agreement. *See* Declaration of Matt Casto, ¶¶ 10 – 11. Furthermore, not only did EPM continue to make monthly payments of the sponsorship fee during months for which Jesse Iwuji was not the sole driver, EPM was actually aware of JIM's use of other drivers and promoted

such drivers via its platform(s) on numerous occasions. *See* Declaration of Matt Casto, ¶¶ 21 – 22. Such actions defeat any claim by EPM that Jesse Iwuji being the sole and exclusive driver for JIM was an essential term of the Sponsorship Agreement. *See, e.g.*, *DigiART, LLC v. Casale*, 2023 WL 6038109, * 3 (M.D. Fla. Sep. 15, 2023) (stating material terms are those terms that are essential to the performance and enforcement of the contract, not just those terms that a party considers material). Jesse Iwuji being the sole and exclusive driver for JIM's NASCAR team cannot be considered an essential or material term, because (i) whether Jesse Iwuji or another driver drove for JIM did not affect JIM's participation in races in which EPM served as primary sponsor[3], which JIM continued to participate in prior to the effective termination of the Sponsorship Agreement and thereafter (to the extent able in light of EPM's failure to comply with the Sponsorship Agreement) (*see* Declaration of Matt Casto, ¶¶ 23, 31 – 33); Declaration of Jesse Iwuji, ¶¶ 19, 23 – 25); and (ii) JIM still was able to ensure that Jesse Iwuji and/or other parties from which Services and/or Deliverables were secured still performed and/or were still available to perform such Services and/or Deliverables as required in accordance with the Sponsorship Agreement. For such reasons, EPM has not met its burden needed to obtain summary judgment.

### III. Conclusion

WHEREFORE, for the reasons set forth herein, JIM respectfully requests that this Honorable Court deny EPM's Motion for Summary Judgment, and grant such other relief that the Court deems just and appropriate.

---

[3] It is important to note that Kyle Weatherman was contracted as a JIM NASCAR racecar driver to help JIM's performance in the NASCAR standings. *See* Declaration of Matt Casto, ¶ 21. It should be obvious that the better the team's performance, the greater the added benefit to EPM.

Dated: February 28, 2024                      Respectfully submitted,

                                               _/s/__Darren A. Heitner_____
                                               Darren A. Heitner, Esq.
                                               **Heitner Legal, P.L.L.C.**
                                               215 Hendricks Isle
                                               Fort Lauderdale, FL 33301
                                               Tel.: 954-558-6999
                                               Fax: 954-927-3333
                                               Email: Darren@HeitnerLegal.com
                                               *Counsel for Plaintiff/Counter-Defendant*

## CERTIFICATE OF SERVICE

     I hereby certify that on February 28, 2024 a copy of the foregoing document was filed electronically via the Court's Electronic Case Filing System and thereby served upon all counsel of record.

                                               _/s/__Darren A. Heitner_____
                                                      Darren A. Heitner, Esq.