# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 22-cv-62268-BLOOM/Valle

JESSE IWUJI MOTORSPORTS, LLC,

      Plaintiff,

v.

EQUITY PRIME MORTGAGE, LLC,

      Defendant.

_____/

# ORDER ON PARTIES'
# MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon two separate Motions: (1) Plaintiff's Motion for Summary Judgment, ECF No. [33], filed on February 13, 2024; Defendant filed a Response in Opposition, ECF No. [38], to which Plaintiff filed a Reply, ECF No. [43]; and (2) Defendant's Motion for Summary Judgment, ECF No. [35], filed on February 14, 2024; Plaintiff filed a Response in Opposition, ECF No. [42], to which Defendant filed a Reply, ECF No. [44]. The Court has reviewed the Motions, all opposing and supporting submissions,[1] the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiff's Motion for Summary Judgment, ECF No. [33], is granted in part and denied in part. Defendant's Motion for Summary Judgment, ECF No. [35], is granted in part and denied in part.

## I.   BACKGROUND

---

[1] Plaintiff filed a Statement of Material Facts ("SMF") in support of its Motion for Summary Judgment, ECF No. [32]. Defendant filed a Response to Plaintiff's SMF ("Response to SMF"), ECF No. [39]. Defendant filed a Statement of Material Facts in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("DSMF"), ECF No. [36]. Plaintiff filed a Response to the DSMF ("Response to DSMF"), ECF No. [40].

### A.  Material Facts

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted. Jesse Iwuji Motorsports ("JIM") is a company that formed a NASCAR racing team. JIM's stated purpose is to develop programs to support transitioning military members and promote diversity in motorsports and other fields. ECF No. [40] ¶ 5. JIM is named after one of its founding members, Jesse Iwuji, an African-American athlete for the U.S. Naval Academy's football team who became one of JIM's race car drivers. *See*, *e.g.*, ECF No. [40-2]. Equity Prime Mortgage ("EPM") is a licensed mortgage lender, whose stated mission is to provide opportunities to build wealth through homeownership to minorities and military veterans. ECF No. [36-9] ¶ 2. Both parties entered into negotiations to make EPM the sponsor of JIM's NASCAR racing team. On November 30, 2021, JIM and EPM executed a Sponsorship Agreement, together with the Statement of Work, collectively referred to as the Agreement ("Agreement"), ECF No. [7-1], delineating the companies' mutual responsibilities pursuant to EPM's sponsorship.

### i.   Terms of the Agreement

Pursuant to the terms of the Agreement, in exchange for JIM's performance of services, EPM agreed to pay JIM a total of six million dollars (USD $6,000,000.00) (the "Compensation"). The Compensation was payable as follows:

(i)     Year One of the Term (2022 Season): Equity Prime Mortgage shall pay JIM Two Million, Two Hundred and Fifty Thousand Dollars (USD $2,250,000.00), to be paid monthly starting December 1, 2021 at the monthly payment amount of One Hundred Eighty Seven Thousand, Five Hundred Dollars (USD $187,500.00/month). Monthly payment shall be paid on the first day of each month.

(ii)    Year Two of the Term (2023 Season): Equity Prime Mortgage shall pay JIM Three Million, Seven Hundred and Fifty Thousand Dollars (USD $3,750,000.00), to be paid monthly starting December 1, 2022 at the monthly payment amount of Three Hundred and Twelve Thousand, Five

2

Hundred Dollars (USD $312,500.00/month). Monthly payment shall be paid on the first day of each month.

Compensation Terms, Statement of Work ("SOW"), ECF No. [7-1] at 6. The Agreement sets forth the terms of the parties' relationship. Section 7(b), entitled "Termination[,]" states, "Either Party may terminate the Agreement upon written notice to the other Party if such Party is in breach of any material provision of the Agreement and such breach is not cured within thirty (30) days after written notice thereof is received by the Party." *Id*. at ¶ 7(b). Section 7(c), entitled "Effect of Termination" states as follows:

> Upon expiration or termination of the Agreement, all rights, duties, and obligations of the Parties shall automatically cease as of the date of expiration or termination; provided, in the event of termination pursuant to Company's material breach of this Agreement, Company acknowledges that it shall remain responsible for paying JIM the entirety of the compensation set forth in the SOW.

*Id.* at ¶ 7(c).

Furthermore, section 12(c) of the Agreement states, "This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between the Parties relating to the subject matter herein." *Id*. at ¶ 12(c). Section 12(f) of the Agreement, entitled "Entire Agreement" states that "No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the Parties." *Id*. at ¶ 12(f).

The SOW sets forth two categories of services to be provided by JIM: (1) Talent Likeness, and (2) Race Sponsorship Deliverables. *Id.* at 6. "Talent Likeness" is defined as "the name, image, likeness, and/or other publicity rights of: (1) Jesse Iwuji, and (2) Emmitt Smith. All use of Talent Likeness shall be subject to JIM's prior review and written approval, which may be withheld in JIM's sole discretion." *Id.* at 6. "Race Sponsorship Deliverables" refers to various "On-Track

Team Commitments" and "Off-Track Team Commitments" to be provided by JIM for the benefit of EPM. In its On-Track Team Commitments, the SOW lists: "Eight (8) Primary Races ("Primary Races") per season to prominently featuring Equity Prime Mortgage Logo and Colors during the 2022 and 2023 seasons[,]" and indicates the race names. *Id.* at 7. It also states that "[t]he Parties reserve the right to modify the Primary Races upon mutual agreement." *Id.*

In its Off-Track Team Commitments, the SOW lists the following services to be performed by JIM, among others:

- One (1) day of production each quarter with Jesse Iwuji (maximum six (6) hours) on a mutually agreeable day. The date, time, and location of the production day shall be mutually determined by the Parties
  - Jesse Iwuji Likeness to be used for commercial, print or digital advertising purposes. All use of Jesse Iwuji's Likeness shall be subject to JIM's prior written approval.
  - JIM will provide Emmitt Smith for 6hrs of production per year (2 hours off-track. 4 hours at track or at current location). The date, time, and location of the production day shall be mutually determined by the Parties.
  - Content direction desired and production day materials (i.e. scripts for review, etc.) shall be provided by Equity Prime Mortgage in advance and shall be mutually agreed upon in each instance by the Parties.

….

- Two (2) Social media posts the week leading up to the race from JIM's and Jesse Iwuji's personal pages. One (1) JIM social media post-race thanking Equity Prime Mortgage for sponsoring team. Eight (8) social media posts from Emmitt Smith's social media promoting Primary Races during 2022 and 2023 – caption to be mutually agreed upon by the Parties and should be focused on Primary Race partnership of race team

....

- Jesse Iwuji to be available for Equity Prime Mortgage podcast once a quarter. The date, time, and location of the podcast taping shall be mutually determined by the Parties. Emmitt Smith available to join with Jesse for 2x podcast each year of agreement. Dates must be mutually agreed upon.
- Jesse Iwuji to be available for a sixty (60) min virtual team talk addressing the Equity Prime Mortgage team once per quarter. Dates must be mutually agreed upon.

*Id.* at 8.[2] The Agreement was signed by Eddy Perez on behalf of EPM and Matt Casto on behalf of JIM. *Id.* at 9.

### ii.    EPM's Failure to Pay

EPM stopped making Compensation payments on October 1, 2022 and November 1, 2022. EPM and JIM staffers were in communication about EPM's failure to make payments, starting on "September 27, 2022 (phone call in which [Perez] communicated that EPM was not doing well with the rate hike and margin calls) and on September 29, 2022 (text about not going to be making [EPM's] 11th payment on October 1st, 2022 or any of the payments)" as memorialized in an email from Matt Casto at JIM to Eddy Perez at EPM on October 12, 2022. ECF No. [32-7]. In that email, Casto offered payment solutions to Perez :

> In order to get us thinking in advance on a possible solution, here are just a few possible starting points for consideration:
> •Delay the start of Year 2 for up to 12 months. Revisit restarting on October 15th, 2023.
> •Possibly reduce the sponsorship amount for year 2 and extend the payment schedule to extend past 12 months.
> •Reach a settlement agreement that is mutually beneficial.
> Please note that these are merely suggestions at this point meant to get us thinking and any future modifications or changes to our agreement would need to be jointly agreed upon by both parties in writing.  We are hopeful to find a solution that could work for both parties as you know how important our relationship is. Our ownership team greatly values our partnership and look forward to working through this challenge together.

> ECF No. [32-7] at 2. On October 13, 2022, Perez answered as follows:

> Thank you for the email and the solutions provided to start honest conversations. My apologies again for my challenges and it's 100% on myself. Unfortunately, I held on longer then I should of before rightsizing the ship. Once again, 100% solely on the eyeballs in the mirror and great appreciate you guys along w the grace!!! I'll get w my CFO to get this going asap. Thank you and apologies again for my challenges!!

---

[2] Emmitt Smith is another member of JIM. ECF No. [40-2] ¶ 3.

ECF No. [32-7] at 1. No contractual modifications were made. On November 3, 2022, JIM

sent EPM a written Notice of Intent to Terminate Sponsorship Agreement ("Notice of Intent to

Terminate"). ECF No. [7-2]. Therein, JIM stated:

> It is JIM's intention to cause a termination of the agreement under Section 7(b),
> titled, "Termination." [EPM] is in breach of a material provision of the Agreement.
> Specifically, [EPM] has failed to make payments to JIM in the amount of
> $187,500.00 on October 1, 2022 and another $187,000.00 on November 1, 2022.
>
> Under Section 7(b) of the agreement, JIM is providing the Company with thirty
> (30) days after receipt of this notice to remedy the issues as set forth above. After
> thirty (30) days, if the actions are not remedied and the breach is not cured, then
> JIM will consider the agreement to be effectively terminated; however, as stated in
> Section 7(c) of the agreement, Company shall remain responsible for paying JIM
> the entirety of the compensation set forth in the SOW.

> *Id.* (emphasis added).

On November 4, 2022, EPM's lawyers acknowledged receipt of the Notice of Intent to

Terminate in an email sent to JIM staff, which stated:

> EPM rejects that notice because JIM failed to perform its obligations pursuant to
> the terms of the Agreement. Specifically, JIM's personnel failed to participate in
> events in accordance with the Scope of Work attached to, and incorporated by
> reference in, the Agreement.
> Consequently, because JIM is in breach of material provisions of the Agreement,
> JIM is hereby notified pursuant to Sections 7(b) and 12(b) of the Agreement that
> EPM intends to terminate the Agreement. Given that JIM cannot cure its breach of
> the Agreement, because the events in which it failed to honor its contractual
> obligations have already taken place, at the end of the thirty (30) days cure period
> referenced in Section 7(b) the Agreement will be terminated, EPM will have no
> further obligation to  make any payments pursuant to the terms of the Agreement,
> and EPM will seek reimbursement of payments make [(sic)] pursuant to the terms
> of the Agreement.
> EPM hereby invokes the mediation provision of section 12(a) of the Agreement for
> the purpose of resolving outstanding issues between the parties. Next week our
> office will provide you with names of potential mediators for consideration and
> selection.
> ECF No. [32-1].

EPM made no additional payments following this email exchange.

The following facts are disputed: EPM alleges that when it sent its email on November 4, 2022, it terminated the Agreement and ended its sponsorship of JIM. DSMF, ECF No. [36] ¶ 26. EPM alleges it terminated the Agreement because JIM failed to comply with its "On-Track" and "Off-Track Team Commitments." *Id*. JIM disputes that this was an effective termination and claims EPM's notice was not in accordance with the terms set forth in the Agreement. JIM Response to DSMF, ECF No. [40] ¶ 26.

### iii.    JIM's Race Sponsorship Deliverables and Talent Likeness

Certain facts pertaining to the performance of the Agreement are in dispute. After the Agreement was signed, EPM argues that JIM breached its On-Track Team Commitments because Jesse Iwuji drove in only four of the eight races EPM sponsored in 2022, and another driver, Kyle Weatherman, drove in the other four. *Id*. at ¶¶ 17-18. JIM asserts that, pursuant to the Agreement, EPM served as sponsor for thirteen races during the 2022 NASCAR Season, in excess of the amount required in the Agreement. ECF No. [40] ¶ 17. JIM adds that Jesse Iwuji drove in seven of those thirteen races. *Id.* at ¶ 18.

JIM and Jesse Iwuji made the following social media posts around EPM-sponsored races:

- Around the March 5, 2022 race:

  o  JIM posted a video of the car on March 1, 2022 with the caption "That #34 @epmplus Chevy Camaro SS" ECF No. [40-2] ¶ 17(a)(i).

  o  JIM posted two additional posts on March 3 and March 4, 2022, which do not include EPM, although they show the JIM car which features the EPM logo. *Id.* at ¶¶ 17(a)(ii)-(iii).

- Around the May 28, 2022 race:

- o On May 23, 2022, JIM posted two pictures of racecars, both tagged @epmortgages. *Id.* at 17(b)(ii)-(iii).

- o On May 27, 2022, JIM posted a picture of a racecar with several hashtags and sponsors, including one #equityprimemortgage hashtag. *Id.* at ¶ 17(b)(i).

- ■ Around the July 16, 2022 race:

  - o Iwuji posted on July 11, 14, and 15, 2022. Each post tagged #EPM and #equityprimemortgage among several other sponsors and hashtags. *Id.* at ¶ 14(b).

- ■ Around the July 23, 2022 race:

  - o On July 17, 2022, Iwuji posted as follows:

    God is good! Let's gooooooo! P8...Halfway through year #1 for our team and we scored our first Top 10 finish for @jesse.iwuji.motorsports! Kyle did a great job driving, the team did a great job preparing the vehicle and managing the race, and our corporate partners have been amazing support throughout the year giving us the opportunity to grow our operation. We could not do this without EPM, Chevrolet, Coca Cola, and all of the other businesses that have supported us since day 1! Let's keep this train moving in a positive trajectory! #JIM #jesseiwujimotorsports #JIMszn #chevrolet #equityprimemortgage #cocacola #NASCAR

    *Id.* at ¶ 14(c)(i).

  - o On July 22, 2022, Iwuji posted a picture of himself thanking Chevrolet at a Chevrolet charity event with an EPM cap. *Id.* at ¶14(c)(ii).

  - o Iwuji posted the day after the race, on July 24, 2022, a lengthy post which concluded with:

    We always want to thank our good Lord for keeping us safe at the track and affording us the opportunity to go after this journey and we want to give a big thanks to our partners at #epmortgages, #chevrolet, and #cocacola! #JIM #jesseiwujimotorsports #JIMszn #TeamChevy #camaross #EPM #equityprimemortgage #coke #teamchevy #chevy #NASCAR

*Id.* at ¶ 14(c)(iii).

■   Around the October 1, 2022 race:

    o   JIM posted a picture of a race on September 25, 2022, with the caption:

What a blazing hot day in Texas!!! It was a character building day though because everything that could go wrong, did go wrong. We battled every circumstance thrown our way until there was no other options available. The @epmortgages Chevy Camaro SS was properly fast, easily a top 10 car, and looked as beautiful as a brand new home you can get financed by Equity Prime Mortgage if you visited www.epm.net right after reading, liking, and sharing this post to your friends…

*Id.* at ¶ 17(c).

    o   Jesse Iwuji posted on September 30, 2022:

SHAKE & BAKE!!! Qualified P22 for Talladega today; I'm looking forward to a beautiful God blessed run tomorrow during the race! It'll be as beautiful as a house you buy with a lovely mortgage from @epmortgages! The time is now 😎💪

*Id.* at ¶ 14(d)(i).

### iv.   The Instant Action

On December 5, 2022, JIM filed its Complaint against EPM asserting a claim for breach of contract, ECF No. [1], later amended by the filing of JIM's Amended Complaint. ECF No. [7]. JIM's claim for breach of contract against EPM (Count I) alleges that EPM materially breached the Agreement by failing to make compensation payments to JIM, starting October 1, 2022. ECF No. [7] at 5. JIM seeks damages in an amount no less than $4,125,000.00, which accounts for the two months of unpaid compensation under Year One of the Term ($375,000.00), the twelve months of compensation due under Year Two of the Term ($3,750,000.00), and attorney's fees and costs, and post-judgment interest at the maximum statutory rate. *Id.* at 6.

On February 9, 2023, EPM filed an Answer, asserting twelve Affirmative Defenses and a Counterclaim, asserting its own claim for breach of contract against JIM (the "Counterclaim"). ECF No. [10]. EPM alleges that JIM materially breached the Agreement when it "failed to participate in certain events in accordance with the Scope of Work as incorporated into the Sponsorship Agreement" and "knowingly concealed that Jesse Iwuji was no longer the sole driver of the EPM sponsored racecar." ECF No. [10] ¶¶ 21-26.

## II. LEGAL STANDARD

### A. Summary Judgment

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the

pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*, 695 F.2d at 1296.

### B.  Breach of Contract

The parties agree that Florida law governs this dispute, as agreed to in the Agreement. ECF No. [7-1] ¶ 12.a. Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); *see also Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). "To constitute a material breach, a party's nonperformance must 'go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part.'" *Big E Trailers, Inc. v. Ohio Andersons, Inc.*, 2016 WL 2943889, at *8 (M.D. Fla. May 20, 2016) (quoting *Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So.2d 853, 857 (Fla. 4th DCA 1972)); *see also Sublime, Inc. v. Boardman's Inc.*, 849 So.2d 470, 471 (Fla. 4th DCA 2003). "A material breach occurs only when an injured party has sustained a substantial injury due to the breach." *Phawa, LLC v. Marjaba Imp. & Exp. Corp.*, No. 21-22208-CV, 2021 WL 4150842, at *2 (S.D. Fla. Aug. 26, 2021), *report and recommendation adopted*, No. 21-CV-22208, 2021 WL 4147770 (S.D. Fla. Sept. 13, 2021). "In addition, in order to maintain an

action for breach of contract, a claimant must also prove performance of its obligations under the contract ....” *American Moisture Control, Inc. v. Dynamic Building Restoration, LLC*, No. 6:06–cv–1908–Orl–28KRS, 2008 WL 4107131, at * 3 (M.D. Fla. Sept. 2, 2008).

“It is a fundamental principle of Florida contract law that a material breach by one party excuses the performance by the other.” *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014). “A material breach is one that goes to the essence of the contract, as opposed to the mere failure to perform some minor part of the contract.” *Id.* at 1309 (citation omitted). It is through this lens that the Court analyzes the parties’ competing claims for breach of contract.

## III. DISCUSSION

### A. Count I of Plaintiff’s Complaint: EPM’s Failure to Pay

#### i. Liability

JIM argues that EPM materially breached the Agreement when EPM stopped making the Compensation payments on October 1, 2022 and November 1, 2022. ECF No. [33] at 6-11. EPM argues that JIM has failed to establish performance of its contractual obligations and thus cannot maintain an action for breach of contract. ECF No. [38] at 10. EPM argues that it failed to pay because JIM had previously breached the Agreement in three ways: (1) Jesse Iwuji failed to drive in all 8 EPM sponsored races and only drove in 4 races; (2) Jesse Iwuji failed to post his two contracted-for social media posts in the weeks preceding the March 5, 2022, July 16, 2023, July 23, 2023 and October 1, 2023 races; (3) Jesse Iwuji only appeared on one podcast and did not appear for an EPM live-event in Quarter 2. *Id.* at 10-11. EPM also contends that JIM has failed to assert it was damaged by EPM’s purported breach. *Id.* at 7. JIM responds it properly pled it was damaged by EPM’s failure to make payments in accordance with the Agreement’s payment obligations, as asserted in its Second Amended Complaint. ECF No. [43] at 6. Moreover, JIM

argues that the Agreement never required Jesse Iwuji to be the sole driver and Iwuji's service as driver did not affect JIM's participation in races in which EPM served as primary sponsor. *Id.* at 7.

The Court therefore analyzes whether EPM's failure to pay JIM the agreed-upon monthly compensation is a breach of the Agreement. On this record, there is little doubt that it was.

There is no genuine dispute of material fact that EPM materially breached the Agreement when it stopped making Compensation payments. EPM stopped making Compensation payments on October 1, 2022 and November 1, 2022, thus breaching the Compensation Terms in the SOW. ECF No. [7-1] at 6. On November 3, 2022, JIM notified EPM of its material breach, gave EPM thirty days to cure the breach, and clarified that if the breach was not cured the Agreement would be terminated. ECF No. [7-2].[3] EPM does not dispute that it failed to make the two payments, and as such, there is no genuine dispute of material fact as to whether the breach occurred. However, EPM argues that it was excused from performance because JIM had previously materially

---

[3] On November 3, 2022, JIM sent EPM a Notice of Intent to Terminate that stated the below:

It is JIM's intention to cause a termination of the agreement under Section 7(b), titled, "Termination." [EPM] is in breach of a material provision of the Agreement. Specifically, [EPM] has failed to make payments to JIM in the amount of $187,500.00 on October 1, 2022 and another $187,000.00 on November 1, 2022.

Under Section 7(b) of the agreement, JIM is providing the Company with thirty (30) days after receipt of this notice to remedy the issues as set forth above. After thirty (30) days, if the actions are not remedied and the breach is not cured, then JIM will consider the agreement to be effectively terminated; however, as stated in Section 7(c) of the agreement, Company shall remain responsible for paying JIM the entirety of the compensation set forth in the SOW.

ECF No. [7-2]. In doing so, JIM complied with Section 7(b) of the Contract, requiring a Party to "terminate the Agreement upon written notice to the other Party if such Party is in breach of any material provision of the Agreement and such breach is not cured within thirty (30) days after written notice thereof is received by the Party." ECF No. [7-1] ¶ 7(b). EPM did not cure its breach within thirty days pursuant to receiving JIM's Notice of Intent to Terminate. On December 3, 2022, thirty days after JIM's Notice of Intent to Terminate, the Agreement was accordingly terminated. *Id.* at ¶ 7(c).

breached the Agreement. "It is a fundamental principle of Florida contract law that a material breach by one party excuses the performance by the other." *Hamilton*, 6 F. Supp. 3d at 1309.

The Court looks at whether the three alleged breaches by JIM excused EPM's performance under the Agreement. The Court finds that they do not. A material breach by JIM would have excused EPM's performance under Florida law, but EPM still had to comply with the Agreement's requirements regulating how it could stop performing in the event of a material breach. The Agreement sets forth a process for EPM and JIM to terminate in the event the other party materially breaches the Agreement:

> Either Party may terminate the Agreement upon written notice to the other Party if such Party is in breach of any material provision of the Agreement and such breach is not cured within thirty (30) days after written notice thereof is received by the Party.

ECF No. [7-1] at 7(b). EPM did not comply with this clause when it believed JIM had materially breached the Agreement. EPM did not terminate the Agreement prior to failing to pay the Compensation on October 1, 2022 and November 1, 2022. Instead, EPM only sent its notice of intent to terminate the Agreement on November 4, 2022 *after* defaulting on the two payments, ECF No. [32-1], and in response to JIM's notice of intent to terminate, ECF No. [7-2]. There, it noted that JIM had breached when "[s]pecifically, JIM's personnel failed to participate in events in accordance with the Scope of Work attached to, and incorporated by reference in, the Agreement." ECF No. [32-1]. EPM accordingly was not relieved of paying JIM its Compensation on October 1, 2022 and November 1, 2022.

Until November 4, 2022 and prior to its failure to pay, EPM did not notify JIM in writing of purported breaches by JIM. The record demonstrates that EPM and JIM staffers were in communication about EPM's failure to make payments, starting on "September 27, 2022 (phone call in which [Perez] communicated that EPM was not doing well with the rate hike and margin

14

calls) and on September 29, 2022 (text about not going to be making [EPM's] 11th payment on

October 1st, 2022 or any of the payments)[,]" as memorialized in an email from Matt Casto at JIM

to Eddy Perez at EPM on October 12, 2022. ECF No. [32-7]. In that email, Casto offered payment

solutions to Perez:

> In order to get us thinking in advance on a possible solution, here are just a few
> possible starting points for consideration:
> •Delay the start of Year 2 for up to 12 months. Revisit restarting on October 15th,
> 2023.
> •Possibly reduce the sponsorship amount for year 2 and extend the payment
> schedule to extend past 12 months.
> •Reach a settlement agreement that is mutually beneficial.
> Please note that these are merely suggestions at this point meant to get us thinking
> and any future modifications or changes to our agreement would need to be jointly
> agreed upon by both parties in writing.  We are hopeful to find a solution that could
> work for both parties as you know how important our relationship is. Our ownership
> team greatly values our partnership and look forward to working through this
> challenge together.

ECF No. [32-7] at 2. On October 13, 2022, Perez answered as follows:

> Thank you for the email and the solutions provided to start honest conversations.
> My apologies again for my challenges and it's 100% on myself. Unfortunately, I
> held on longer then I should of before rightsizing the ship. Once again, 100% solely
> on the eyeballs in the mirror and great appreciate you guys along w the grace!!! I'll
> get w my CFO to get this going asap. Thank you and apologies again for my
> challenges!!

ECF No. [32-7] at 1. The Agreement was not modified.

EPM could not stop performing without either modifying the Agreement or terminating it

in compliance with the Agreement's terms. EPM did not do so. EPM cannot now invoke a material

breach by JIM as a justification to escape its contractual obligations when it failed to comply with

the Agreement's process to do just that.

The three alleged breaches by JIM did not excuse EPM's non-payment on the Agreement

when EPM failed to comply with the Agreement's requirement for termination in the event of a

material breach. JIM is entitled to summary judgment as to EPM's liability on its failure to pay the Compensation agreed to in the Agreement (Count I).

### ii. Damages

EPM asserts that JIM has failed to claim it was damaged by EPM's purported breach, ECF No. [38] at 7, which JIM contests. ECF No. [43] at 6. Furthermore, JIM argues it is entitled to the entirety of the contractual compensation if it obtains summary judgment on Count I of its Complaint. ECF No. [33] at 9-11.[4] JIM points to the relevant contractual clause to support its entitlement to monetary damages, ECF No. [33] at 9-11, which states as follows:

> Upon expiration or termination of the Agreement, all rights, duties, and obligations of the Parties shall automatically cease as of the date of expiration or termination; provided, in the event of termination pursuant to Company's material breach of this Agreement, Company acknowledges that it shall remain responsible for paying JIM the entirety of the compensation set forth in the SOW.

ECF No. [7-1] at ¶ 7(c).

EPM does not discuss damages in its Response to Plaintiff's Motion for Summary Judgment, ECF No. [38], nor in its Motion for Summary Judgment, ECF No. [35]. In its Answer, EPM raised an affirmative defense as to damages: that Plaintiff may take no recovery because of its failure to mitigate damages. Affirmative Defense No. 12, ECF No. [10].

JIM has established that it suffered damages resulting from the breach. *J.J. Gumberg Co.*, 847 So. 2d at 1049. Plainly, EPM stopped paying the compensation it owed JIM on October 1, 2022 in the amount of $187,500.00 a month. This non-payment damaged Plaintiff.

---

[4] In its Complaint, JIM sought:
to recover damages in an amount no less than $4,125,000.00, which accounts for the two (2) months of compensation unpaid under Year One of the Term ($375,000.00), plus the entire twelve (12) months of compensation due under Year Two of the Term ($3,750,000.00), as well as a reimbursement from EPM of its reasonably incurred attorney's fees and costs, post-judgment interest at the maximum statutory rate, and any other relief that the Court deems reasonable and just.
ECF No. [7] at 5-6.

However, issues of material fact remain as to the quantum of damages to which JIM is entitled. The day after JIM sent its Notice of Intent to Terminate, EPM also sent its written notice and alleged a material breach. *See* ECF Nos. [7-2], [32-1]. The breach by JIM on the social media post requirement, discussed below, is relevant to the extent of JIM's recovery. Accordingly, there remains outstanding issues of material fact as to the amount of damages to which JIM is entitled. The Court accordingly declines to grant summary judgment to JIM on Count I as to damages.

Accordingly, the Court finds that JIM is entitled to summary judgment as to liability on Count I, EPM's breach of contract claim, but not as to the amount of damages to which JIM is entitled.

### B.  Defendant's Counterclaim: JIM's Scope of Work and Use of Other Drivers

The Court next turns to the question of whether JIM or EPM are entitled to summary judgment as to Defendant's Counterclaim, where EPM claims that JIM breached the Agreement when (1) Iwuji failed to drive in each EPM-sponsored race; (2) JIM and Iwuji failed to comply with the social media post requirements and (3) Iwuji failed to appear on podcasts and failed to attend a live-event in quarter two of 2022. *See generally* ECF No. [35].

### i.    Iwuji's Failure to Drive in Each EPM-Sponsored Race

EPM argues that it is entitled to summary judgment on its Counterclaim, ECF No. [10] at 6-10. *See generally* ECF No. [35]. In its Counterclaim, EPM asserts that JIM breached the Agreement when it failed to have Jesse Iwuji drive for JIM in all eight EPM sponsored races. ECF No. [35] at 7-8. EPM points to various contractual clauses in the Agreement to argue that:

> [T]he terms of the Agreement are clear that Jesse Iwuji was to be the sole and exclusive driver of the EPM sponsored races …. This is evident where: (a) the Agreement only provided the name, image and likeness rights for Jesse Iwuji and Emmitt Smith; (b) the Agreement provided that it would be Jesse Iwuji who would provide two social media posts in advance of each race; and (c) the Agreement

provided that Jesse Iwuji would appear quarterly at EPM for: (1) live-events; (2) podcasts; and (3) to create content.

ECF No. [38] at 10.  JIM also seeks summary judgment as to EPM's Counterclaim. ECF No. [33] at 11-17. JIM asserts that there is no provision in the Agreement requiring Iwuji to be the sole driver and that EPM's intent is irrelevant in the face of an unambiguous agreement. *Id.* at 13-17.

JIM is correct that none of the clauses EPM references requires Iwuji to be the sole driver in EPM-sponsored races. The Court refuses to insert a contractual clause in the Agreement that the parties did not include. When presented with a clear and unambiguous contract, the "language [of the contract] itself is the best evidence of the parties' intent and its plain meaning controls[.]" *Palm Beach Pain Mgmt., Inc. v. Carroll*, 7 So. 3d 1144, 1145 (Fla. 4th DCA 2009).

EPM urges the Court to look at evidence extrinsic to the Agreement to determine that the intent of EPM when entering into the Agreement was that Jesse Iwuji would be the sole driver. ECF No. [35] at 9-10. EPM argues that it entered into the Agreement because of that belief, as it was drawn to "Iwuji's story as a veteran and a minority to reach his dream with NASCAR, [a] story [that] perfectly aligned with EPM and its goal of 'empowering people more.'" ECF No. [36-7] ¶ 5. The Court declines to look at extrinsic evidence here as it is inconsistent with the terms of the Agreement. The parties made clear they intended the Agreement to incorporate their final agreement. Paragraph 12(c) of the Agreement states: "This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between the Parties relating to the subject matter herein." ECF No. [7-1] ¶ 12(c).

Contrary to EPM's contention, this is not a case where "two reasonable interpretations' of a contract" exist, thus requiring "the submission of evidence extrinsic to the contract bearing upon

the intent of the parties" *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1270 (S.D. Fla. 2011) (citations omitted). "If a contract's terms are clear and unambiguous, the language itself is the best evidence of the parties' intent and its plain meaning controls, warranting summary judgment." *Pearson v. Caterpillar Fin. Servs. Corp.*, 60 So. 3d 1168, 1171 (Fla. 4th DCA 2011) (citation omitted). Moreover, under the parol evidence rule recognized in Florida law, "evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete agreement." *Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000) (citation omitted). Looking to the contractual text, the Court finds no written requirement that Iwuji be the sole driver of JIM participating in NASCAR races. JIM accordingly did not breach the contract when other drivers than Iwuji drove in EPM-sponsored races.

Accordingly, EPM fails to establish it is entitled to summary judgment as to this aspect of its Counterclaim. Conversely, JIM has successfully established that it did not breach the Agreement when it used drivers other than Iwuji as there is no term in the Agreement requiring Iwuji to be the sole driver. ECF No. [33] at 12-14.

### ii.    Iwuji and JIM's Failure to Post on Social Media

### a.    Liability

Next, the Court considers whether JIM or EPM, which both separately move for summary judgment on EPM's Counterclaim, would be entitled to judgment as a matter of law as to Iwuji's failure to comply with the social media requirements of the SOW. JIM argues that EPM never notified JIM of its failure to produce a deliverable listed in the SOW. ECF No. [33] at 9-10. EPM argues that JIM breached its "Off-Track Team Commitments" in the following three ways. First, in the weeks leading into the March 5, 2022, July 16, 2022, July 23, 2022 and October 1, 2022

races, Iwuji failed to acknowledge and thank EPM as a sponsor on his social media channels, ECF No. [35] at 7, *see also* DSMF, ECF No. [36] ¶ 21, and JIM's social media page failed to have any EPM dedicated posts in the weeks leading up to the March 5, 2022, May 28, 2022 or October 1, 2022 races. *Id.* at ¶ 22. JIM disputes this fact, and states that Iwuji and JIM's social media pages did dedicate posts to EPM in the weeks leading up to March 5, 2022, May 28, 2022 and October 1, 2022 races. ECF No. [40] ¶ 22; Iwuji Declaration, ECF No. [40-2] ¶¶14, 15, 16-17. EPM argues those posts fall short of the contractual requirement because the March 4, 2022 post makes no reference to EPM; the July 11, 14, 15 2022 posts only include EPM, but does not thank EPM as a sponsor; the July 17, 2022 and July 24, 2022 only references EPM along with JIM's other corporate sponsors Chevrolet and Coca Cola; and on the July 22, 2022 post, Iwuji has an EPM baseball cap and thanks Chevrolet, with no other reference to EPM.  ECF No. [44] at 6-7.

The Agreement details the below social media requirements for JIM to comply with:

> •      Two (2) Social media posts the week leading up to the race from JIM's and Jesse Iwuji's personal pages. One (1) JIM social media post-race thanking Equity Prime Mortgage for sponsoring team. Eight (8) social media posts from Emmitt Smith's social media promoting Primary Races during 2022 and 2023 – caption to be mutually agreed upon by the Parties and should be focused on Primary Race partnership of race team.

ECF No. [7-1] at 8.

On the first requirement, the record demonstrates that both JIM and Iwuji failed to comply with the requirement for two posts *leading up to the race* by JIM and Iwuji "from JIM's and Jesse Iwuji's personal pages." *Id.* The Agreement expressly requires two posts from JIM and two posts from Iwuji. Both JIM and Iwuji failed to comply with these requirements. Iwuji issued at least two social media posts from his personal page in the weeks leading into the July 16, 2022, July 23, 2022 and October 1, 2022 races. ECF No. [40-2] at ¶¶ 14(b)-(d). However, Iwuji only uploaded

20

one social media post in the week leading up to the March 5, 2022 race, and not two as required by the Agreement. *Id.* at ¶ 14(a).

Similarly, JIM failed to issue two social media posts in the week leading up to two races: JIM does not point to any posts made by JIM ahead of the July 16, 2022 and July 23, 2022 races. JIM issued only one post leading up to the October 1, 2022 race, and not two as required. *Id.* at ¶ 17(c). However, JIM properly issued at least two social media posts in the weeks leading to the March 5, 2022 race. ECF No. [40-2] at ¶ 17. Accordingly, JIM and Iwuji failed to comply with the first requirement for two posts leading up to the race by JIM and Iwuji.[5]

On the second requirement for a JIM social media post *after the race* thanking EPM for sponsoring the team, the record demonstrates that JIM failed to comply with the requirement that JIM make one "social media post-race (sic) thanking Equity Prime Mortgage for sponsoring team." ECF No. [7-1] at 8-9. Looking at JIM's social media posts included in Iwuji's Declaration, ECF No. [40-2], JIM complied with the requirement for a social media post after the race for the July 23, 2022 race. On July 24, 2022, JIM posted a lengthy post on its Instagram page which concluded with:

> We always want to thank our good Lord for keeping us safe at the track and affording us the opportunity to go after this journey and we want to give a big thanks to our partners at #epmortgages, #chevrolet, and #cocacola! #JIM #jesseiwujimotorsports #JIMszn

---

[5] As to this first requirement, the Agreement does not specify what content should be in the two social media posts uploaded by JIM and Iwuji before races, unlike the second requirement for an after-race post "thanking Equity Prime Mortgage" for sponsoring the team. ECF No. [7-1] at 8-9. The Agreement merely requires two "[s]ocial media posts the week leading up to the race from JIM's and Jesse Iwuji's personal pages." ECF No. [7-1] at 8-9. Accordingly, the Court does not reach the questions of whether the posts were compliant with the Agreement when (a) Iwuji's March 4, 2022 post made no reference to EPM, ECF No. [40-2] ¶ 17(a)((iii); (b) the July 11, 14, 15 2022 posts only included EPM, but did not thank EPM as a sponsor, *id.* at ¶ 14(b); (c) when Iwuji's July 17, 2022 and July 24, 2022 posts only referenced EPM along with JIM's other corporate sponsors Chevrolet and Coca Cola, *id.* at ¶¶14(c)(i), (iii); when on July 22, 2022 post, Iwuji has an EPM baseball cap and thanked Chevrolet, with no other reference to EPM, *id.* at ¶ 14(c)(ii). The record establishes that JIM breached only when looking at the number of social media posts.

Case No. 22-cv-62268-BLOOM/Valle

#TeamChevy  #camaross  #EPM  #equityprimemortgage  #coke
#teamchevy #chevy #NASCAR

ECF No. [40-2] ¶14(c)(iii). The record does not include a social media post after the race thanking

EPM by JIM for other races at issue.

EPM has alleged (a) a valid contract (b) a material breach and (c) has argued it suffered

damages the social media breach, which is essential to be able to make out a breach of contract.

See *J.J. Gumberg Co.*, 847 So. 2d at 1049. EPM has established that JIM breached the Agreement

when it failed to comply with some of its social media commitments set forth in ECF No. [7-1] at

8. There is no genuine dispute of material fact as to that breach, and EPM is entitled to summary

judgment as to liability pertaining to JIM's breach of the social-media requirement set forth in the

Agreement.

### b.    Damages

However, there remains a genuine issue of material fact as to the quantum of damages that

EPM is entitled to pursuant to JIM's breach. EPM does not specifically allege the extent of

damages suffered pursuant to the social media post requirement. ECF No. [35] at 10-11. The issue

of the extent of damages EPM is entitled to pursuant to JIM's breach on the social media post

requirement remains in front of this Court and shall be determined by a trier of fact.

Accordingly, the Court grants EPM summary judgment as to liability regarding Iwuji and

JIM's failure to comply with their social media requirements but denies summary judgment as to

damages on this issue. Conversely, the Court denies JIM summary judgment as to liability and

damages on this aspect of EPM's Counterclaim.

### iii. Iwuji's Failure to Appear on EPM podcasts and at an EPM Live-event in Quarter 2

Finally, the Court considers whether JIM and EPM, which both separately move for summary judgment on EPM's Counterclaim, would be entitled to summary judgment as to Iwuji's failure to appear on podcasts and live virtual team talks. EPM claims that Jesse Iwuji only appeared on one podcast quarterly during the ten-month sponsorship and failed to appear at a live virtual team talk in quarter 2 of 2022. ECF Nos. [35] at 10, [44] at 10. JIM does not dispute these facts but disputes that this constitutes a contractual breach, because EPM failed to propose dates for Jesse Iwuji's attendance at virtual team talks, whose dates had to be "mutually agreed upon." ECF No. [40] ¶ 23-24 (quoting SOW, ECF No. [7-1] at 8). Moreover, JIM argues that EPM failed to propose dates for Jesse Iwuji to appear on EPM's podcast quarterly. *Id.* at ¶ 24.

The Agreement states the appearance requirements as follows:

> This SOW is subject to the terms and conditions of the Sponsorship Agreement dated November 16, 2021 by and between Equity Prime Mortgage, LLC, its affiliates and subsidiaries (the "Company" or " Equity Prime Mortgage") and Jesse Iwuji Motorsports, LLC ("JIM"). This SOW sets forth the specific services to be provided (together, the "Services"), and work product to be delivered by JIM (together, the "Deliverables") with regard to the project described herein (the "Project"), as well as the deliverables and deadlines for both JIM and Company, and any additional terms governing the relationship. Any defined terms in this SOW that are not defined herein shall have the meaning ascribed to them in the Sponsorship Agreement.
> …
> • Jesse Iwuji to be available for Equity Prime Mortgage podcast once a quarter. The date, time, and location of the podcast taping shall be mutually determined by the Parties. Emmitt Smith available to join with Jesse for 2x podcast each year of agreement. Dates must be mutually agreed upon.
> • Jesse Iwuji to be available for a sixty (60) min virtual team talk addressing the Equity Prime Mortgage team once per quarter. Dates must be mutually agreed upon.

ECF No. [7-1] at 6, 8. Here, JIM states, and EPM does not contest, that EPM failed to propose dates relating to Jesse Iwuji's appearance on podcasts once a quarter as well as to a sixty-minute virtual team talk. Response to DSMF, Additional Facts, ECF No. [40] ¶¶ 6-7. The language

of the contract indicates that these two commitments require "Jesse Iwuji to be *available*" (emphasis added) for both of these events. ECF No. [7-1] at 8. The Court must look to the "usual, natural, and ordinary meaning of the contractual language." *Pearson*, 60 So. 3d at 1172. Doing so here, JIM did not breach its contractual obligations when Jesse Iwuji did not appear for a podcast or team talk when EPM did not specifically request his appearance. The Agreement does not require Iwuji to initiate these events or even mandate that Iwuji commit to these events, but rather asks Iwuji to be "available" for these events. In the absence of requests by EPM for Jesse Iwuji to appear on the EPM podcast and virtual team talk, Iwuji did not fail to make himself "available" to EPM for podcast appearances and virtual team talks.

As the movant, EPM does not point to anywhere in the record where it requested Iwuji's attendance at a podcast or team talk, for which Iwuji subsequently failed to make himself available. Since Iwuji was never asked to attend a podcast or team talk, JIM did not breach the Agreement under a plain reading of the contract. EPM has not carried its burden to establish it is entitled to summary judgment as to this issue as a matter of law. In contrast, JIM has carried its burden and established that as a matter of law Iwuji did not breach the Agreement when Iwuji failed to attend podcasts once a quarter and a virtual team talk. ECF No. [43] at 7. JIM is entitled to summary judgment as to this aspect of EPM's Counterclaim.

JIM is entitled to partial summary judgment — and conversely EPM is not entitled to partial summary judgment — as to two aspects of EPM's Counterclaim: there is no genuine dispute of material fact that JIM did *not* breach the Agreement when it used drivers other than Iwuji or when Iwuji failed to attend a virtual team event or podcasts. EPM is entitled to partial summary judgment — and conversely, JIM is not entitled to partial summary judgment — regarding Iwuji and JIM's failure to post on social media, as there is no genuine issue of material fact that JIM

failed to comply with its social media requirement. Neither party is entitled to summary judgment as to the damages EPM can recover pursuant to JIM's social media breach, as a genuine dispute of material fact remains regarding the extent of damages.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  JIM's Motion for Summary Judgment, **ECF No. [33]**, is **GRANTED in part and DENIED in PART** consistent with this Order.

2.  Defendant's Motion for Summary Judgment, **ECF No. [35]**, is **GRANTED in part and DENIED in PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida on May 3, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record